Jones, Judge:
This claim originated before the Attorney General of West Virginia and was ready for decision when this Court was created.
*7 The claimant entered into a contract with the State Road Commission, in January 1963, for relocation of a gas pipeline in Wood County at a total contract price of $152,608.25.
Item C of the contract provided for the removal of 12,570 lineal feet of pipeline to be salvaged and owned by the claimant, which was bid at 50 cents per lineal foot or a total of $6,285.00. The claimant proved that it had a firm commitment for the sale of the pipe to be salvaged at $1.00 per foot or $12,570.00. By letter, dated July 11, 1963, E. G. Loser, District Engineer, instructed the claimant not to perform the work under Item C of the contract, setting forth that the bid price for this item was less than 10% of the total contract price and, therefore, not considered to be a major item, and subject to deletion under Section 1.4.2 of the Standard Specifications, Roads and Bridges of the State Road Commission of West Virginia. Said Section 1.4.2 further provides the following:
“The Commission may omit any item or items, in the Contract, provided that notice of intent to omit such item or items is given to the Contractor before any material has been purchased or labor involved has been performed, and such omission shall not constitute grounds for any claim for damages or loss of anticipated profits. The Commission may omit any item or items shown in the estimate, at any time, by agreeing to compensate the Contractor for the reasonable expense already incurred and to take over at actual cost any unused material purchased in good faith for use for the item or items omitted.”
The claimant adds the contract price for Item C of $6,285.00 and the committed sales price of the salvaged pipe of $12,570.00 and contends that Item C involves $18,855.00, which is more than 10% of the total contract price, that it was the low bidder by approximately the amount of income it expected to receive from this item, and that it has been damaged in the amount of $12,570.00 which it expected to profit from this item.
While the Court believes that the part of the contract involved here is the bid figure of $6,285.00, which is less than 10% of the total contract price, and not the total amount that claimant expected to realize from the work performed, plus the anticipated profit from the sale of salvaged pipe to *8 a third party, the State Road Commission apparently relies primarily on the provision of the Standard Specifications quoted above. The claimant- contends that the words, “Before any material has been purchased or labor involved has been performed” are intended to include actions taken by the contractor in reliance upon the contract which would result in financial detriment upon the omission of the item in question. The claimant also says that “The reasonable expense already incurred” is the third party’s commitment to pay $12,570.00 for salvaged pipe, and that the State Road Commission could only omit the item by agreeing to pay said amount to the claimant. However, after stretching the language of the specifications as far as it will go, we have to deal with what we consider to be the controlling words of the Section which are: “* * * and such omission shall not constitute grounds for any claim of damage or loss of anticipated profits.” The claimant did not show any out-of-pocket loss, but to the contrary, can only point to an anticipated profit of $12,570.00 which certainly is not “material * * *purchased”, “labor * * *performed” or “reasonable expense.”
Accordingly, the claim arising out of Item C of the contract is denied.
The second part of this claim is more difficult, involving the greater portion of a 530 page record of conflicting testimony taken before the Attorney General, and now before this Court for consideration and decision. The contract provided that “all specifications of welding procedures, materials, equipment, conditions, testing, etc., are to follow and be in strict agreement with the latest ASA-B31.1-1955 Code for Pressure Piping, Section 6, Chapter IV, or API Standard 1104 ‘Standard for Field Welding of Pipelines’.” The contract documents further provide that:
“The Commission shall be privileged at any time to cut welds from the pipeline for the purpose of testing each welder’s work. The first such weld for each welder will be replaced by the Contractor at no cost to the Commission. Welds removed from the line shall be subjected to the same test as the qualification weld. If these tests are satisfactory to the Engineer, the Commission will bear the cost of replacing the weld (except as noted above). If the weld *9 does not pass the tests, the Contractor shall bear the cost of replacing the weld, and the welder who made the weld shall be removed from the job.”
The State Road Commission employed Robert W. Hunt Company, Engineers, for inspection of materials to be used by the claimant, qualification of welders and determination of fulfillment of API-1104 Specifications. The Robert W. Hunt Company subcontracted the inspection work to Consolidated Testing Laboratories. Trouble between the claimant and Consolidated Testing Laboratories started immediately. The contract between the State Road Commission and the claimant provided that the claimant should begin work within ten days and complete work on the project in ninety calendar days. The claimant commenced work on February 5, 1963, and was ready for inspections on March 27, 1963. Consolidated did not arrive at the project until April 3, 1963, apparently under an arrangement with the State Road Commission that it should commence work on April 2, 1963. The claimant asserts damages for delay and waiting time labor costs of $1,750.00 and delay and waiting equipment costs of $5,014.80, for one week’s delay. Thereafter, during the course of the project, Consolidated rejected 133 of 400 welds as not meeting specifications of API-1104, and the claimant consistently contended that the specifications were not properly applied. The claimant protested strongly and frequently to the State Road Commission; and hired independent inspectors who checked much of the rejected work and agreed with the claimant that most of it was acceptable under the API-1104 Code. The claimant urged the State Road Commission to conduct independent tests, and on one occasion, three cut out welds, rejected by Consolidated, were taken to the State Laboratory where they were subjected to destructive tests (admittedly most accurate), and found to be acceptable. Neither Consolidated nor Hunt seemed to be interested in settling the controversy, remaining aloof and uncooperative. Considering the evidence of the claimant’s experience and proven ability in the construction of pipelines, the 33-1/3% rejection rate imposed upon the claimant appears on its face to be excessive, and the evidence supports such a conclusion.
While the testimony taken in this case is highly conflicting, we are of opinion that a great many welds were improperly *10 rejected, that notices of acceptance or rejection were unduly withheld, and that resultant delays were substantial and damaging to the claimant. It also appears to be significant that work contracted to be performed in ninety days required an additional one hundred twenty days for completion, and the State Road Commission expressly waived any penalties for late performance. However, this portion of the claimant’s demand, in the amount of $41,361.76, appears to include the complete cost of repairing and replacing all welds rejected by the inspectors and all of the waiting time labor and equipment occasioned by such rejections, which is not fully supported by the evidence. Neither are we convinced that the claimant is entitled to damages in the amount of $6,764.80 for a full week’s delay at the commencement of work. A precise mathematical measurement of the claimant’s damages is not possible, but we have endeavored to reach a decision that will be fair and equitable. It is our judgment that the claimant, Kenton Meadows Company, Inc., should recover, and we do hereby award to said claimant the sum of $28,535.00.